1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10          **EASTERN DIVISION**
11

| | |
|---|---|
| 12   SARAH WASSON, | No. ED CV 09-1201-PLA |
| 13                   Plaintiff, | |
| | **MEMORANDUM OPINION AND ORDER** |
| 14           v. | |
| 15   MICHAEL J. ASTRUE, | |
| 16   COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| 17                   Defendant. | |

18

19                              **I.**

20                         **PROCEEDINGS**

21          Plaintiff filed this action on July 2, 2009, seeking review of the Commissioner's denial of her

22   application for Supplemental Security Income payments.  The parties filed Consents to proceed

23   before the undersigned Magistrate Judge on July 23, 2009, and July 31, 2009.  The parties filed

24   a Joint Stipulation on January 29, 2010, that addresses their positions concerning the disputed

25   issues in the case.  The Court has taken the Joint Stipulation under submission without oral

26   argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on May 23, 1984. [Administrative Record ("AR") at 50.] She has a high school education and has taken some college classes [AR at 84, 92, 542-43], and does not appear to have any past relevant work experience.  [AR at 79-80, 87-88, 98, 123-37; see AR at 17-19.]

On March 29, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, claiming an inability to work since April 23, 2000, due to, among other things, headaches and digestive problems. [AR at 50-52, 78-79, 86-87, 143-45.] After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 25-38.] A hearing was held on August 19, 2005, at which plaintiff appeared with counsel and testified on her own behalf.  [AR at 539-57.]  On October 28, 2005, the ALJ determined that plaintiff was not disabled.  [AR at 14-19.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on April 23, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 5-7.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer

to the decision of the Commissioner. <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); <u>Drouin</u>, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine

1    whether the claimant has sufficient "residual functional capacity" ("RFC")[1] to perform her past work;

2    if so, the claimant is not disabled and the claim is denied.   20 C.F.R. §§ 404.1520(e)-(f),

3    416.920(e)-(f).  The claimant has the burden of proving that she is unable to perform past relevant

4    work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability

5    is established.  The Commissioner then bears the burden of establishing that the claimant is not

6    disabled, because she can perform other substantial gainful work available in the national

7    economy.  The determination of this issue comprises the fifth and final step in the sequential

8    analysis. 20 C.F.R. §§ 404.1520(g), 416.920(g); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at

9    1257.

10

11   **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

12          In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial

13   gainful activity since March 29, 2004, the date she protectively filed her application for

14   Supplemental Security Income payments. [AR at 18.] At step two, the ALJ concluded that plaintiff

15   has "the minor medical impairments of obesity, decreased esophageal motility, GERD

16   [gastroesophageal reflux disease], hiatal hernia, left wrist pain with instability of the DRUJ (distal

17   radial-ulnar joint), and a history of surgical removal of a supraorbital neuroma," which in

18   combination qualify as "severe." [Id.] At step three, the ALJ determined that plaintiff's impairments

19   do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff

20   retained the residual functional capacity ("RFC") to perform the full range of light work.[2] [Id.] At

21   step four, the ALJ concluded that the record did not establish that plaintiff has any past relevant

22   work. [AR at 19.] At step five, using the Medical-Vocational Rules as a framework, the ALJ

23   concluded that plaintiff is not disabled. [Id.]

24   _____

25      [1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
     Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26      [2]   Light work is defined as work involving "lifting no more than 20 pounds at a time with
27   frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b),
     416.967(b). If a plaintiff is able to perform light work, he or she is also deemed able to perform
28   sedentary work. See id.

4

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred by failing to (1) properly consider the treating physician's opinion regarding plaintiff's headaches; (2) properly consider plaintiff's credibility; (3) properly consider the type, dosage, and side effects of plaintiff's medications; and (4) obtain the testimony of a vocational expert. [Joint Stipulation ("JS") at 2.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### PLAINTIFF'S CREDIBILITY AND THE ALJ'S STEP-FIVE DETERMINATION

Plaintiff contends that the ALJ failed to (1) properly assess plaintiff's credibility and (2) obtain the testimony of a vocational expert, resulting in an improper step-five determination that plaintiff is not disabled. [JS at 2, 6-10, 13-14.] The Court finds that the ALJ relied in his step-five determination on an erroneous finding made in his credibility analysis, requiring remand.

The ALJ concluded that plaintiff is "less than credible" and afforded her "testimony and allegations . . . little evidentiary weight." [AR at 17.] One of the reasons the ALJ provided for discounting plaintiff's credibility was his understanding that plaintiff "admitted that she performs in-home health care services in caring for her parents." [Id.] Based on this understanding, the ALJ concluded that plaintiff "has the residual functional capacity to perform the full range of light work that precludes lifting and carrying more than 20 pounds occasionally or 10 pounds frequently, and standing, walking, or sitting for more than about six hours of an eight-hour workday." [AR at 18.] The ALJ noted that the Dictionary of Occupational Titles ("DOT") "lists the occupation of home attendant . . . as semiskilled labor requiring an exertional capacity for medium work," and concluded that plaintiff's "ability to perform work activity that is customarily performed at the medium exertional level provides great evidentiary support for finding the claimant remains capable of performing work activity at the light exertional level on a sustained basis." [AR at 17.]

The ALJ's determination that plaintiff lacked credibility because she worked as a home attendant is not supported by substantial evidence. The ALJ based this determination on plaintiff's purported "[admission] that she performs in-home health care services in caring for her parents."

5

1  [Id.] No evidence of record supports the ALJ's conclusion that plaintiff has the ability to perform

2  the occupation of home attendant as described in the DOT, however.  At the hearing, plaintiff

3  testified that she receives in-home support service payments from the county for "taking care of

4  both of [her] parents."  [AR at 545.]  When asked specifically what she does for her parents, she

5  explained that she brings them beverages and pills; helps them brush their hair; helps her mother

6  "get around the house" and perform her "everyday activities"; prepares food "as much as [she] can";

7  does "light housecleaning"; and helps her mother with the laundry and with shopping. [AR 553-54.]

8  The ALJ made no effort to compare plaintiff's reported duties to those of a home attendant as

9  defined in the DOT[3] [see AR at 17], and plaintiff's scant testimony does not alone constitute

10 substantial evidence that she functioned as such.  An ALJ is generally entitled to rely on the DOT

11 for "information about the requirements of work in the national economy," but, when evaluating

12 evidence about a claimant's past relevant work or ability to perform other substantial gainful work,[4]

13 he must consider whether it conflicts with the DOT.  Massachi v. Astrue, 486 F.3d 1149, 1152-53

14 (9th Cir. 2007) (internal quotations omitted); Rawlings v. Astrue, 318 F. Appx. 593, 594-95 (9th Cir.

15 2009) (ordering remand where ALJ did not inquire whether vocational expert's testimony about

16 claimant's past relevant work deviated from the DOT) (citable for its persuasive value pursuant to

17 Ninth Circuit Rule 36-3).  The ALJ's failure to do so here renders the Court unable to determine

18 whether the ALJ's rationale to find plaintiff not credible was supported by the evidence or whether

19 substantial evidence supports his determination that plaintiff functioned as a home attendant as

20 defined in the DOT.

21     Moreover, in finding that plaintiff has "[t]he ability to perform work activity that is customarily

22 performed at the medium exertional level," the ALJ implicitly determined that plaintiff has the

23

24     [3]    The DOT provides that a home attendant "[c]ares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of" numerous tasks, including changing

25 linen, cleaning, preparing and serving food, administering medications, entertaining the patient, and other duties. DOT No. 354.377-014. Though the DOT's description of the duties of a home

26 attendant may appear to be broad, plaintiff's testimony alone does not establish that she functioned as such.

27

28     [4]    This evidence is ordinarily obtained through the testimony of a vocational expert. See Massachi, 486 F.3d at 1152-53.

1  capacity for performing such work activity "on a regular and continuing basis."  20 C.F.R. §§

2  404.1545(b), (c), 416.945(b), (c); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c) (defining

3  RFC as the "maximum degree to which the individual retains the capacity for sustained

4  performance of the physical-mental requirements of jobs" (emphasis added)).  "A 'regular and

5  continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work

6  schedule."  Social Security Ruling 96-7p.[5]  Here, plaintiff testified that the county pays her for

7  assisting her parents for "[a] little more than 20 or about 20 hours a month."  [AR at 545-46.]  No

8  evidence of record supports the ALJ's implicit conclusion that plaintiff functions as a home

9  attendant for her parents for "[eight] hours a day, for [five] days a week, or an equivalent work

10  schedule."  Thus, the ALJ's determination that plaintiff functions as a home attendant as defined

11  by the DOT does not constitute a clear and convincing reason for discounting plaintiff's credibility.[6]

12  See Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

13        The ALJ's finding that plaintiff functions as a home attendant also impacted his step-five

14  determination that plaintiff is not disabled.  [See AR at 17-18.]  At step five, the ALJ bears the

15  burden of establishing that the claimant is not disabled because she can perform substantial

16  gainful work available in the national economy.  Drouin, 966 F.2d at 1257.  An ALJ can satisfy this

17  burden in two ways.  First, an ALJ may call a vocational expert to testify at the hearing.  Andrews,

18  53 F.3d at 1043.  The vocational expert answers the question of whether there are jobs available

19  in the national economy that can be performed by a hypothetical person with all of the claimant's

---

20

21      [5]  Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and

22  are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

23

24      [6]  The ALJ provided other questionable reasons for discounting plaintiff's credibility.  For example, he stated that "claimant's motivation to work is low to nonexistent."  [AR at 17.]  This

25  determination may conflict with plaintiff's activities as an in-home care provider for her parents and as a college student.  [See AR at 17-18, 543-47, 555-56.]  The ALJ also stated that plaintiff

26  "admitted in her testimony that, most of the time, she drives herself the 30 miles to get to college." [Id.]  This statement is incorrect.  Plaintiff testified unambiguously that her parents regularly drive

27  her to school.  [AR at 544 (Q: "How far away is the school from where you live?"  A: "About 30 minutes."  Q: "How do you get back and forth?"  A: "My parents."  Q: "They will drive you?"  A:

28  "Yes."); AR at 545 (Q: "Which one of your parents drives you to school?"  A: "My dad.").]

1  limitations. Id. at 1044. Alternatively, an ALJ may employ the Medical-Vocational Guidelines (the

2  "grids"), which "consist of a matrix of the four factors identified by Congress -- physical ability, age,

3  education, and work experience -- and set forth rules that identify whether jobs requiring specific

4  combinations of these factors exist in significant numbers in the national economy." Heckler v.

5  Campbell, 461 U.S. 458, 461-62 (1983). When the grids match the claimant's qualifications, they

6  "direct a conclusion as to whether work exists that the claimant could perform." Id. at 462. "When

7  the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a

8  framework and make a determination of what work exists that the claimant can perform, or (2) rely

9  on a vocational expert when the claimant has significant non-exertional limitations." Hoopai v.

10  Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (citations omitted).

11         Here, as plaintiff argues, the ALJ did not obtain the testimony of a vocational expert. [JS

12  at 13-14.] Instead, the ALJ mechanically applied the grids to support his finding that plaintiff is not

13  disabled. [AR at 18 ("Considering the claimant's exertional capacity for the full range of light work

14  in combination with her age, education and work experience, [the grids] direct[] a conclusion that

15  the claimant is 'not disabled.'").] The ALJ's determination of plaintiff's RFC -- one of the essential

16  factors addressed in the grids -- relied heavily, if not exclusively, on his finding that plaintiff has

17  "[t]he ability to perform work activity that is customarily performed at the medium exertional level."

18  [AR at 17-18.] As explained above, this determination is not supported by substantial evidence.

19  On this record, then, the ALJ's mechanical reliance on the grids was erroneous, because the grids

20  may not match plaintiff's true qualifications. See Hoopai, 499 F.3d at 1075. Therefore, the ALJ

21  did not sustain his burden of proving that plaintiff is not disabled because she can perform

22  substantial gainful work available in the national economy.  Remand is warranted on this issue.[7]

23  /

24  /

25

26         [7]   In light of the Court's remand order, the Court does not address plaintiff's remaining
   contentions of error, but notes that a new determination of plaintiff's ability to perform substantial
27  gainful work available in the national economy on remand may impact the ALJ's assessment of
   plaintiff's credibility, his determination of her RFC, and his decision whether or not to obtain
28  vocational expert testimony.

VI.

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate in order to reassess plaintiff's credibility and whether she can perform substantial gainful work available in the national economy.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.  Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 7, 2010

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

9